UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL SHAVERS,

    Plaintiff,

v.                                             Case No. 2:05-cv-125
                                              HON. R. ALLAN EDGAR

KERRY SHANTZ, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Michael Shavers, an inmate currently confined at the Alger Maximum Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against defendants employed at the Chippewa Correctional Facility in Kincheloe, Michigan. Defendants are Correction officers Kerry W. Shantz, Daniel A. Rosebohm, Resident Unit Officers, Arnulfo Ortiz, Robert Brehm and Kerry Shantz, Resident Unit Manager Donald Mansfield and Lieutenant Mark Rice.

Plaintiff's complaint alleges that defendants used excessive force and delayed medical care for his injuries. Plaintiff alleges that on February 20, 2003, he was confined in the segregation unit at the prison. With his hands cuffed behind his back, he was escorted into the unit yard. Plaintiff stopped in the lobby and made an oral request to defendant Rice for protection from his cell mate Pratt. Plaintiff feared assault because other inmates were encouraging Pratt to assault plaintiff, because plaintiff had made a previous complaint of assault against inmate Hardman. Plaintiff stated that inmate Pratt threatened to beat the shit out of plaintiff if plaintiff returned from yard.

Defendant Rice instructed plaintiff to go into the yard, and told plaintiff that he already had protection. Defendant Mansfield allegedly told plaintiff that you cannot request protection in administrative segregation. Plaintiff alleges that defendant Rosebohm, Brehm and Shantz forced plaintiff back into his cell. Plaintiff alleges that excessive force was used to place him back into his cell. Plaintiff observed defendant Oritz handcuff inmate Pratt inside the cell. Plaintiff alleges that as his cell door opened he feared an assault from inmate Pratt. Plaintiff states that his legs went limp. Defendants forcefully yanked plaintiff's body off the floor into the air. Plaintiff alleges that he continued to ask for protection from inmate Pratt. Plaintiff alleges that defendants began to strike plaintiff with their fists. Plaintiff asserts that defendant Rosebohm violently pulled the handcuff lead strap through the door slot for more than five minutes causing plaintiff extreme pain. Plaintiff heard an unidentified correctional officer state "stop damn it that's enough stop it." Defendant Rosebohm then stopped. Plaintiff pleaded for defendants to release the pressure of the handcuffs.

Defendant Mansfield then appeared and informed plaintiff that he would be placed in a cell by himself. Plaintiff alleges that he was escorted and locked in the shower without incident. Plaintiff alleges that after being placed in an observation cell he began experiencing pain in his neck, face and upper body. Plaintiff alleges that his wrists were injured and his hands were numb. Plaintiff requested health services. Defendant Rice allegedly stated that he could see plaintiff's injuries, but that he would not call health services. Plaintiff alleges that he sat for 30 or 40 minutes in pain. At approximately 9:20 a.m., defendant Brehm appeared at plaintiff's cell door. Plaintiff requested health care and defendant Brehm responded that health care made 6:30 rounds in the unit. Defendant threatened plaintiff with a misconduct report if plaintiff did not stop yelling.

At approximately 11:00 a.m., a nurse came to plaintiff's cell door. After an examination, the nurse told plaintiff that both of his "thumps" may be broken. Allegedly, the nurse questioned defendant Brehm regarding what had happened and why health services was not called earlier. Approximately one hour later, plaintiff was taken to the infirmary, where he was x-rayed. Plaintiff states that his right hand was placed in a cast.

Plaintiff was placed in an observation cell until March 5, 2003. Plaintiff was examined by medical staff on February 25, 2003 for pain and numbness in his hands, wrists, thumbs and neck. Plaintiff was examined by Dr. Hansen on February 26, March 5, March 11 and March 19, 2003. Plaintiff alleges that he was improperly treated and his health concerns were not resolved. On April 3, 2003, plaintiff was seen by an unknown doctor who answered his questions and prescribed Naxproxen for pain. Plaintiff was transferred to the Southern Correctional Facility in Jackson, Michigan, on April 14, 2003. On April 25, 2003, plaintiff requested health care and a prescription for Naxproxen for pain. Plaintiff was seen by a doctor on April 28, 2003, who prescribed Naxproxen for 30 days. On May 27, 2003, plaintiff alleges that he was completely healed from his injuries and that he no longer needed medication.

Defendants move for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R.

Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff alleges that defendants used excessive force against him.  The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958).  The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346.  Among unnecessary and wanton infliction of pain are those that are "totally without penological justification."  *Id.*

Plaintiff's claim involving the use of force must be analyzed under the Supreme Court authority limiting the use of force against prisoners.  This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to

prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings.  *See, e.g.*, *Whitley*, 475 U.S. at 321-22.

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment.  *Rhodes*, 452 U.S. 347.  The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied.  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 6-7.  In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response.  *Id.* (citing *Whitley*, 475 U.S. at 321); *accord McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990).  Physical restraints are constitutionally permissible where there is penological justification for their use.  *Rhodes*, 452 U.S. at 346; *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996); *Hayes v. Toombs*, No. 91-890, 1994 WL 28606, at * 1 (6th Cir. Feb. 1, 1994); *Rivers v. Pitcher*, No. 95-1167, 1995 WL 603313, at *2 (6th Cir. Oct. 12, 1995).

Plaintiff was simply forced into his cell when he pushed back at officers returning him to his cell.  Plaintiff's cell mate was restrained and the door to plaintiff's cell was opened.  Plaintiff alleges that he was afraid to go into his cell because he feared an assault by his cell mate.  Defendants claim that plaintiff requested protection from all segregation prisoners and not a specific prisoner.  The force used by the officers was minor and reasonable under the circumstances.  Minor force was also used when defendant Rosenbohm attempted to remove plaintiff's restraints through the food slot.  The videotape of the incident depicts plaintiff being escorted to his cell.  When the

cell door opened, plaintiff pushed back. The officers then forced plaintiff into the cell. The force used appeared to be minor. The officers attempted to remove the restraints through the cell door slot. Plaintiff refused to cooperate. Plaintiff would not allow the officers to remove his restraints or his cell mate's restraints.

At some point, plaintiff threatened himself with harm. As a result, plaintiff was then taken to a shower cell and searched without incident. Plaintiff requested to see health care for his wrists. Plaintiff was placed in an observation cell. Plaintiff received only minor injuries to his wrists which plaintiff alleges completely healed. Plaintiff was found guilty of a major misconduct of disobeying a direct order as a result of this incident.

Plaintiff alleges that he was denied medical care. However, plaintiff was examined several times. Plaintiff received pain medication. Further, plaintiff admits that he healed completely. The Supreme Court has held that deliberate indifference to a prisoner's serious illness or injury states a violation of the Eighth Amendment's "cruel and unusual punishments" clause because it constitutes the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). However, not every claim by an inmate of inadequate medical treatment rises to the level of an Eighth Amendment violation.

The standard by which such claims are judged involves two elements: the plaintiff's medical need must be "serious," and the plaintiff must show that the defendants were "deliberately indifferent" to that need. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1 (1992); *see also Wilson v. Seiter*, 501 U.S. 294 (1991).

"Deliberate indifference" requires an intentional effort to deny or ignore Plaintiff's need for medical care. *Estelle*, 429 U.S. at 105; *see also*, *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Harding v. Kuhlmann*, 588 F. Supp. 1315 (S.D. N.Y. 1984), *aff'd*, 762 F.2d 990 (2d Cir. 1985). Thus injury resulting from mere negligent conduct is insufficient to state an Eighth Amendment claim under Section 1983. *Estelle* 429 U.S. at 105; *see also Daniels v. Williams*, 474 U.S. 327, 333 (1986). Rather, the official's conduct "must demonstrate deliberateness tantamount to an intent to punish." *Hicks v. Frey*, 992 F.2d 1450 (6th Cir. 1993).

Complaints that the doctor did not prescribe a specific medication or should have ordered specific tests or negligently failed to provide adequate medical care may state a claim for malpractice under state law but do not state a claim that an inmate's federal rights have been violated. *See*, *Williams v. Duckworth*, 598 F. Supp. 9, 13-15 (N.D. Ind. 1983), *aff'd without opinion*, 749 F.2d 34 (7th Cir. 1984). In *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976), cited in *Estelle*, the Sixth Circuit remarked:

> Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.

*Id.* at 860, n. 5.

In addition, the Sixth Circuit recently observed:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. at 105-06).

Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-155 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. April 4, 1997). As the court in *Estelle v. Gamble* explained, medical malpractice does not become a constitutional violation merely because the victim is a prisoner. *Id*. at 106. In the opinion of the undersigned, plaintiff received adequate medical care for non-serious injuries, that completely resolved on their own.

Moreover, defendants are entitled to qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the

unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of the pre-existing law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours

of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d 425. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). In the opinion of the undersigned, defendants are entitled to dismissal of plaintiff's Eighth Amendment failure to protect, excessive force and medical care claims.

Accordingly, it is recommended that Defendants' Motion for Summary Judgment (Docket #40) be granted and that this case be dismissed in its entirety. It is further recommended that the court grant plaintiff's motion to file declaration of allegations (docket #34).

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal. It is recommended that should the plaintiff appeal this decision, the court assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he should be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
    TIMOTHY P. GREELEY
    UNITED STATES MAGISTRATE JUDGE

Dated:   June 21, 2006